1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

7
8

RICKEY EGBERTO,                          )          3:06-CV-00715-BES (RAM)
                                         )
           Plaintiff,                    )
                                         )
    vs.                                  )          <u>**REPORT AND RECOMMENDATION**</u>
                                         )          <u>**OF U.S. MAGISTRATE JUDGE**</u>
NEVADA DEPARTMENT OF                     )
CORRECTIONS, et al.,                     )
                                         )
           Defendants.                   )
_____  )

9
10
11
12
13
14

        This Report and Recommendation is made to the Honorable Brian E. Sandoval, United

15

States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant

16

to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

17

        Before the court is Plaintiff's Motion for Preliminary Injunction (Doc. #35). Defendants

18

opposed the motion (Doc. #42) and Plaintiff replied (Doc. #43).

19

**I.  BACKGROUND**

20

        Plaintiff is a prisoner in Ely State Prison (ESP) in Ely, Nevada in the custody of the

21

Nevada Department of Corrections (NDOC) (Doc. #33).  Plaintiff brings his complaint

22

pursuant to 42 U.S.C. § 1983, alleging prison officials violated his Eighth Amendment right

23

against cruel and unusual punishment and his Fourteenth Amendment right to due process

24

(*Id*.).  Plaintiff also asserts a state law claim for negligence/gross negligence based on the same

25

set of underlying facts (*Id*.).

26

        Plaintiff alleges Defendants failed to provide him with adequate medical care for his

27

back condition and failed to protect him from imminent danger by housing him in the same

28

prison as two (2) "neo-Nazi" gang members against whom he testified at their murder trial
(*Id.*). Specifically, Plaintiff alleges Defendants denied him medical treatment for his herniated
(bulging) lumbar discs by denying him surgery and proper medication for his excruciating
back pain (Doc. #33 at 3-4). Plaintiff further alleges Defendants housed him with two (2)
"Neo-Nazi" gang members against whom he testified in helping the State convict said gang
members of the murder of another inmate, which took place during a prison beating witnessed
by Plaintiff (*Id.* at 4). Plaintiff asserts he testified at the gang members' murder trial at great
peril to himself and was of the understanding that, because of his testimony, he would never
be housed at the same prison as the convicted murderers (*Id.*). Plaintiff claims he has been
subjected to threats from several other "neo-Nazi" gang members for many months, including
threats to cut off his head (*Id.*). Based on the foregoing facts, Plaintiff alleges Defendants have
acted with deliberate indifference towards his serious medical needs and his safety (*Id.*).

In the instant motion, Plaintiff seeks the following preliminary injunctive relief: (1)
allowing Plaintiff to receive medical care and treatment at the Regional Medical Facility at
Northern Nevada Correctional Center (hereinafter "NNCC") by a doctor specializing in the
treatment of back pain; (2) enjoining Defendants, their employees, agents and successors in
office from providing medical treatment to Plaintiff that is inconsistent with the standards
of medical care and treatment in the State of Nevada as a whole; (3) enjoining Defendants,
their employees, agents and successors in office from refusing to provide and/or delaying
necessary medical treatment and care to Plaintiff in suitable and adequate facilities within
the State of Nevada or elsewhere; (4) enjoining Defendants and their successors in office from
failing to instruct, supervise, and train their employees and agents in such a manner as to
assure the delivery of medical treatment and care to Plaintiff which is consistent with the
standards of medical care in the State of Nevada as a whole; (5) enjoining Defendants and their
successors in office from retaliatory transfers or discipline for Plaintiff asserting his rights to
medical treatment and services; (6) enjoining Defendants, their employees, agents and
successors in office from failing to provide a safe environment for Plaintiff while in the care,

2

custody and control of the Nevada Department of Corrections, and specifically to transfer Plaintiff from the Ely State Prison immediately to another facility within the Nevada Department of Corrections or to a facility in the State of California or elsewhere (Doc. #35 at 12-13).

## II. PRELIMINARY INJUNCTION LEGAL STANDARD

A fundamental principle of a preliminary injunction is the basic function to preserve the status quo ante litem pending a determination of the action on the merits. *Larry P. v. Riles*, 502 F.2d 963, 965 (9th Cir. 1974); *Washington Capitols Basketball Club, Inc. v. Barry*, 419 F.2d 472, 476 (9th Cir. 1969); *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804 (9th Cir.) *cert. denied*, 375 U.S. 821 (1963). In the Ninth Circuit, the moving party must meet one of two tests. Under the first test, "[t]he traditional equitable criteria for granting preliminary injunctive relief are (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). "In cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff." *Beardslee v. Woodford,* 395 F.3d 1064, 1067 (9th Cir. 2005) (citing *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992)); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Under the second test, the moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. These [last two criteria] are not separate tests, but the outer reaches 'of a single continuum.'" *Los Angeles Memorial Coliseum Commission v. National Football League,* 634 F.2d 1197, 1200-1201 (9th Cir. 1980) (internal citations omitted).

"The critical element ... is the relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly. No chance of success at all,

however, will not suffice." *Benda v. Grand Lodge of Intern. Ass'n of Machinists and Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978). At an irreducible minimum, Plaintiff must show that there is a fair chance of success on the merits. *Immigrant Assistance Project of Los Angeles County Fed'n of Labor v. Immigration and Naturalization Serv.,* 306 F.3d 842, 873 (9th Cir. 2002); *see also Stanley v. Univ. of S. Cal.,* 13 F.3d 1313, 1319 (9th Cir. 1994) (quoting *Martin v. Int'l Olympic Comm.,* 740 F.2d 670, 674-75 (9th Cir. 1984)). If the harm factor favors the nonmoving party, a preliminary injunction may be granted only if the moving party can show a strong likelihood of success on the merits. *Immigrant Assistance Project,* 306 F.3d at 873.

For some requested preliminary injunctions, the moving party has an even heavier burden. This heightened burden applies when the preliminary injunction would "(1) disturb the status quo, (2) [is] mandatory as opposed to prohibitory, or (3) provide[s] the movant substantially all the relief he may recover after a full trial on the merits." *Kikumura v. Hurley,* 242 F.3d 950, 955 (9th Cir. 2001). Where the requested preliminary injunction alters the status quo, the movant will ordinarily find it difficult to meet its heavy burden without showing a likelihood of success on the merits. *Id.*

Finally, under the Prison Litigation Reform Act (PLRA), prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. *The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief* and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2) (emphasis added). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a) ... operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no

4

1   longer may courts grant or approve relief that binds prison administrators to do more than

2   the constitutional minimum." *Id*. at 999.

3                               **III. DISCUSSION**

4           Plaintiff requests the court grant injunctive relief by enjoining Defendants from failing

5   to provide adequate medical care for his back, failing to supervise and train their employees

6   and agents with regards to Plaintiff's medical treatment and care, transferring Plaintiff or

7   disciplining Plaintiff in retaliation for asserting his rights to medical treatment and services,

8   and failing to provide Plaintiff with a safe environment (Doc. #35 at 12).  Plaintiff further

9   requests the court grant injunctive relief by requiring Defendants provide Plaintiff with

10  medical care and treatment at NNCC by a doctor specializing in back pain and requiring

11  Defendants transfer Plaintiff to another prison either within the State of Nevada or elsewhere

12  (*Id*.).  Plaintiff asserts Defendants have unquestionably engaged in conduct that threatens

13  Plaintiff's life and the injunctive relief will not be prejudicial to Defendants in any way (*Id*.

14  at 3-4).  Plaintiff further asserts he has a likelihood of success on the merits because

15  Defendants acted with deliberate indifference when they transferred Plaintiff to ESP where

16  two (2) of his enemies are housed and they acted with deliberate indifference by denying

17  Plaintiff proper medical treatment for his back (*Id*. at 5-12).

18          Defendants argue Plaintiff cannot show a likelihood of success on the merits because

19  he has been receiving treatment for his back condition, ESP is a highly structured environment

20  in which inmates very rarely have any contact with one another, and Plaintiff is in disciplinary

21  segregation and has no contact with other inmates (Doc. #42 at 3).  Defendants further argue

22  Plaintiff has not shown the balance of hardships tips in his favor, he has submitted evidence

23  that has not been properly authenticated and he has requested broad injunctive relief that has

24  not been narrowly tailored as required under the PLRA (*Id*.).  Defendants assert Plaintiff's

25  proposed injunctive relief implicates the public interest and, due to Plaintiff's disciplinary

26  history, a transfer of Plaintiff is not in the best interest of the public (*Id*. at 13).

27

28                                       5

1    Plaintiff responds that the only treatment he has received for his back pain is "sporadic

2    pain medication" since 2005 (Doc. #43 at 2). Plaintiff further responds that he is in danger

3    at ESP, despite Defendants assertion that he has no contact with other inmates, which is

4    shown by attacks on other inmates at ESP, by Plaintiff being placed in a visiting cell with one

5    of the gang members he testified against and by being placed in a prison bus between ESP and

6    Carson City with active Aryan Warrier gang members (Doc. #43 at 2-3). Plaintiff asserts there

7    is no longer a protective custody unit at ESP (Doc. #35 at 5) and Defendants should send

8    Plaintiff to another NDOC facility with a protective custody unit (Doc. #43 at 3).

9    **A.    MANDATORY VS. PROHIBITORY INJUNCTIONS**

10    A prohibitory preliminary injunction preserves the status quo, while a mandatory

11    injunction "goes well beyond simply maintaining the status quo *pendente lite* [and] is

12    particularly disfavored." *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)

13    (*quoting Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)). When a mandatory

14    preliminary injunction is requested, the district court should deny such relief unless the facts

15    and law clearly favor the moving party. *Id.; Stanley v. Univ. of Southern California*, 13 F.3d

16    1313, 1320 (9th Cir. 1994). "[C]ourts are more reluctant to grant a mandatory injunction than

17    a prohibitory one and ... generally an injunction will not lie except in prohibitory form. Such

18    mandatory injunctions, however, are not granted unless extreme or very serious damage will

19    result and are not issued in doubtful cases or where the injury complained of is capable of

20    compensation in damages." *Anderson*, 612 F.2d at 1115 (*citing Clune v. Publishers' Assn. of

21    New York City*, 214 F.Supp. 520 (S.D.N.Y. 1963), *aff'd per curiam*, 314 F.2d 343 (2d Cir.

22    1963)).

23    While Plaintiff requests partly prohibitory relief, this injunction, if granted, would

24    require affirmative conduct on the part of Defendants. Plaintiff requests the court order

25    Defendants transfer Plaintiff to NNCC to see a doctor who specializes in the treatment of back

26    pain and Plaintiff also requests the court order Defendants immediately transfer Plaintiff to

27    another prison facility either within NDOC or in another state. Compelling Defendants to

28

6

1    transfer Plaintiff to another facility and compelling Defendants to treat Plaintiff's back pain

2    at a particular facility by a specialist would not maintain the status quo. Accordingly,

3    Plaintiff's motion for such "mandatory preliminary relief" is subject to heightened scrutiny

4    and should not issue unless the facts and law clearly favor Plaintiff. *Anderson*, 612 F.2d at

5    1114; *see also Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993). "[S]uch

6    relief is particularly disfavored under the law of this circuit." *Stanley*, 13 F.3d at 1320.

7    **B.    PROBABLE SUCCESS ON THE MERITS AND POSSIBILITY OF IRREPARABLE INJURY**

8         Based on the relief requested, in evaluating whether Plaintiff has shown a probable

9    success on the merits, the court must determine whether the facts and law clearly favor

10   Plaintiff. As previously discussed, because Plaintiff's requested preliminary injunction alters

11   the status quo, it will be difficult for Plaintiff to meet his heavy burden without showing a

12   likelihood of success on the merits, rather than just a "fair chance" of success as Plaintiff

13   asserts in his motion (Doc. #35 at 3).

14        Plaintiff's First Amended Complaint alleges violations of Plaintiff's Eighth and

15   Fourteenth Amendment rights based on Defendants' alleged denial of proper medical

16   treatment and deliberate indifference to Plaintiff's personal safety (Doc. #33). Plaintiff's

17   status as an inmate determines the appropriate standard for evaluating Plaintiff's conditions

18   of confinement claims. The Eighth Amendment applies to "convicted prisoners." *See Whitley*

19   *v. Albers*, 475 U.S. 312, 318-319 (1986); *Bell v. Wolfish*, 441 U.S. 520, 536 n.16 (1979); *Jones*

20   *v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). The more protective Fourteenth Amendment

21   standard applies to conditions of confinement when detainees have not been convicted. *See*

22   *Bell*, 441 U.S. at 535-537; *see also Gary H. v. Hegsrtom*, 831 F.2d 1430 (9th Cir. 1987). Here,

23   Plaintiff has been convicted; therefore, the Eighth Amendment standard applies to Plaintiff's

24   claims.

25        **1.    Denial of Adequate Medical Care Claim**

26        Under the Eighth Amendment, where inmates challenge prison conditions, the

27   Supreme Court has applied a "deliberate indifference" standard. In *Estelle v. Gamble*, 429

28                                          7

U.S. 97, 104 (1976), the Supreme Court determined that deliberate indifference to a prisoner's serious medical needs constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once proscribed." *Estelle*, 429 U.S. at 104-105. Deliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983. *Id.* at 105.

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). A showing of medical malpractice or negligence is insufficient to establish a violation under the Eighth Amendment. *Id.* Instead, Plaintiff must meet two requirements in order to show Defendants acted deliberately indifferent to his serious medical needs. First, Plaintiff must show, as an objective matter, that Defendants' actions rise to the level of a "sufficiently serious" deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also, Rhodes v. Chapman*, 452 U.S. 337, 345-346 (1981); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, as a subjective matter, Plaintiff must show Defendants had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, Plaintiff must show Defendants knew he faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it either by their actions or inactions. *Id.* at 837. Plaintiff need not show Defendants acted or failed to act believing that harm actually would befall him; it is enough that Defendants acted or failed to act despite having knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842.

In seeking injunctive relief, the subjective factor should be determined in light of Defendants' current attitudes and conduct, their attitudes and conduct at the time this suit was brought and their attitudes persisting thereafter. *Id.* at 845. To establish eligibility for an injunction, Plaintiff must demonstrate the continuance of Defendants' knowing and unreasonable disregard of an objectively intolerable risk of harm during the remainder of this

1   litigation and into the future. *Farmer*, 511 U.S. at 846.  If the court finds the Eighth
2   Amendment's subjective and objective requirements satisfied, appropriate injunctive relief
3   may be granted. *Id*.

4        Here, Plaintiff alleges Defendants have denied Plaintiff medical treatment for his
5   excruciating back pain since 2005 (Doc. #35 at 7).  Defendants contend the evidence
6   demonstrates Plaintiff was provided continuous medical treatment, including pain medication,
7   which he often rejected (Doc. #42 at 10).  Defendants also contend that "most recently, surgery
8   has not been recommended." (*Id*.).  In short, Defendants argue that "Plaintiff's disagreement
9   with this course of treatment represents a difference of opinion between an inmate and
10  medical staff."  Defendants argument is belied by the record.

11       The record indicates that, on or about January, 2006, Plaintiff's spouse wrote a letter
12  to the Director of NDOC requesting Plaintiff be given medical care for his back (Doc. #35 at
13  8).  Then, on or about February 15, 2006, Plaintiff was examined by Dr. Richard A. Long, of
14  the Carson Orthopedic Center Spinal Institute of Nevada (*Id*.).  Dr. Long diagnosed Plaintiff
15  with "[s]ignificant herniated lumbar disc, with very significant sciatic involvement, and
16  perhaps some peroneal pressure giving intermittent incontinence." (*Id*., Exh. 3).  Dr. Long
17  recommended Plaintiff "undergo an MRI, and then re-evaluation, as I think surgery may be
18  the best cure here." (*Id*.).  Dr. Long also noted medications are indicated in Plaintiff's case
19  (*Id*.).  Plaintiff was not given an MRI or a reevaluation; but, was subsequently transferred back
20  to ESP.  Plaintiff alleges he was transferred back to ESP before he received an MRI or re-
21  evaluation in retaliation for filing medical grievances and in an attempt to deny Plaintiff relief
22  from his excruciating back pain (*Id*. At 9).  Defendants contend Plaintiff was transferred back
23  to ESP on or about March 13, 2006 because he was scheduled for a court appearance in White
24  Pine County on April 5, 2006 (Doc. #42 at 10).  The record shows Plaintiff was transferred
25  to ESP almost one (1) month prior to his scheduled court appearance and did not receive an
26  MRI until sometime in late 2006 (Doc. #35 at 9).  Plaintiff asserts this MRI revealed his
27  condition was worse than originally opined (*Id*.).

28                                    9

It appears that based on that MRI and due to Plaintiff's medical condition, Judge Papez of White Pine County District Court ordered Plaintiff examined by Dr. Long (Doc. #35 at 9). On April 25, 2007, more than one (1) year after Plaintiff's first examination, Dr. Long again examined Plaintiff and diagnosed Plaintiff as possibly having a "disc or entrapment of some type in the thoracic spine or lumbar plexus ... [which] could cause radiation into his testicle area and also could cause the sensory changes beginning at the T10 area distally." (*Id*., Exh. 6). Dr. Long also opined that is "is also possible he could have abdominal pathology applying unusual pressure on the ending nerves or lumbar sacral plexus." (*Id*.). Dr. Long recommended that, if further evaluation is considered, Plaintiff receive a thoracic MRI, which would examine the area above the lumbar spine MRI taken in July of 2005 (*Id*.). He also recommended that Plaintiff's right abdominal and right flank tenderness could be evaluated by surgical consultation and imaging studies and medical evaluation could be considered to rule out any radiculopathy in the right lower extremities (*Id*.).

On May 11, 2007, Dr. Long wrote a letter to the Attorney General indicating he did not believe Plaintiff could sit in a courtroom for up to six (6) hours a day for 3 to 4 days without a level of discomfort that would prevent Plaintiff from conducting his defense (*Id*., Exh. 8). Dr. Long stated Plaintiff's "right flank tenderness could be medical or surgical consultation" and a CT of the abdomen and pelvis with contrast might speed this process up (*Id*.). Based on Dr. Long's opinion and recommendations, Judge Papez postponed Plaintiff's trial indefinitely (*Id*. at 9).

The record shows that on three (3) different occasions from February 15, 2006 through May 11, 2007, Dr. Long opined that Plaintiff may need surgery and recommended some form of treatment, such as MRIs and CT scans. In addition, based on Dr. Long's evaluations of Plaintiff, Judge Papez believed Plaintiff's medical condition was serious enough to prevent him from conducting his defense and postponed Plaintiff's trial. Yet, despite Dr. Long's recommendations, and despite having no contrary opinions or recommendations from other physicians, Defendants have failed to provide Plaintiff with the recommended follow-up

10

1   treatment for his serious medical condition.   Defendants contention that Plaintiff's

2   disagreement with his course of treatment represents a mere difference of opinion between

3   an inmate and medical staff lacks merit.   Other than the possible disagreement over pain

4   medication, Defendants have provided no medical staff opinions and/or recommendations

5   regarding a course of treatment for Plaintiff's condition with which Plaintiff disagrees. To the

6   contrary, it appears Defendants either disagree with Dr. Long's recommendations or have

7   simply disregarded them.   Plaintiff, on the other hand, agrees with medical staff (Dr. Long)

8   and has adamantly requested Defendants follow Dr. Long's recommended course of treatment

9   (Doc. #35, Exhs. 9-11).

10   Defendants refer to Doc. #35-7, p. 10 to support their contention that most recently

11   surgery has not been recommended.   Doc. #35-7, p. 10 is dated April 13, 2007, which is prior

12   to Dr. Long's letter to the Attorney General recommending possible surgery and a CT of the

13   abdomen and pelvis (Doc. #35, Exh. 6).   Furthermore, although some parts of the document

14   are illegible, the last sentence appears to state "decompression surgery as indicated from abm."

15   (*Id.*).   Defendants also rely heavily on the April 5, 2006 court date to contend they did not

16   deliberately delay Plaintiff's medical treatment (Doc. #42 at 10).   However, the record shows

17   Defendants have yet to follow Dr. Long's recommendations after the April 5, 2006 court date,

18   after the more recent May 11, 2007 letter to the Attorney General indicating Plaintiff could

19   not stand trial due to the seriousness of his medical condition, and after postponement of

20   Plaintiff's trial due to his medical condition.

21   Under these facts, Plaintiff has shown Defendants acted with deliberate indifference

22   to his serious medical needs.   First, as an objective matter, Plaintiff has shown a "sufficiently

23   serious deprivation." *Farmer*, 511 U.S. at 834.   The record supports Plaintiff's allegation that

24   he suffers excruciating pain, which is evidenced by Plaintiff's inability to stand trial solely due

25   to his medical condition.   Second, as a subjective matter, Plaintiff has shown Defendants had

26   a "sufficiently culpable state of mind." *Id.*   Defendants were well aware of the seriousness of

27   Plaintiff's condition based on Dr. Long's opinions and Judge Papez's postponement of

28

1    Plaintiff's trial, yet Defendants failed to act despite having knowledge of a substantial risk of

2    serious harm. *Farmer*, 511 U.S. at 842.  "Deliberate indifference to serious medical needs of

3    prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth

4    Amendment." *Estelle*, 429 U.S. 104 (internal citation omitted).  Defendants have denied and

5    delayed Plaintiff's access to medical care by refusing to follow the suggested course of

6    treatment for Plaintiff's condition and, instead, merely providing Plaintiff with pain

7    medication (although that is in dispute, as well).

8            As previously stated, in seeking injunctive relief, the subjective factor should be

9    determined in light of Defendants' current attitudes and conduct, their attitudes and conduct

10   at the time this suit was brought and their attitudes persisting thereafter. *Farmer*, 511 U.S.

11   at 845.  The subjective and objective requirements are both satisfied here and the record

12   indicates Defendants have no intention of providing Plaintiff with the follow-up treatment

13   recommended by Dr. Long.  Thus, Defendants' attitudes and conduct suggest a preliminary

14   injunction may be warranted in this case.  Furthermore, Plaintiff has shown a likelihood of

15   success on the merits and the facts and the law clearly favor Plaintiff in this claim.

16           Under these facts, Plaintiff has met his burden of showing a combination of probable

17   success on the merits and a possibility of irreparable injury where his back condition appears

18   to have worsened over time and will, likely, continue to worsen without proper medical

19   treatment.  Accordingly, a preliminary injunction ordering Defendants to follow Dr. Long's

20   recommended course of treatment or ordering Defendants to send Plaintiff for another

21   evaluation and then following that doctor's recommended course of treatment should be

22   **GRANTED**, keeping in mind the PLRA's requirement that the injunctive relief should be

23   narrowly drawn, extending no further than necessary to correct the harm.

24           **2.    Denial of Personal Safety Claim**

25           Plaintiff alleges that Defendants violated his Eighth Amendment right against cruel

26   and unusual punishment by housing Plaintiff at ESP with the two (2) Neo-nazi gang members

27   against whom he testified.  The Eighth Amendment imposes a duty on prison officials to take

28                                                    12

reasonable steps to protect an inmate's safety. *Hoptowit*, 682 F.2d at 1250-1251.  To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference." *Id*. at 837; *see also County of Washoe*, 290 F.3d 1175, 1187-1188 (9th Cir. 2002).  The obviousness of the risk may be sufficient to establish knowledge. *Farmer*, 511 U.S. at 842.

As previously discussed, deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk or reasonably responded, albeit unsuccessfully, to the risk. *Farmer*, 511 U.S. at 844.  Here, Defendants do not dispute that Plaintiff faces a substantial risk of serious harm if he comes into contact with the two (2) Neo-nazi gang members against whom Plaintiff testified who are also currently housed at ESP.  Rather, Defendants insist that they have reasonably responded to that risk.  Defendants contend that Plaintiff is not in danger at ESP because he is currently serving disciplinary segregation time in a lock-down unit and, once he has served his disciplinary segregation, he will be placed in administrative segregation as a form of protective custody (Doc. #42 at 12).  Defendants assert Plaintiff's disciplinary segregation will continue for at least another year and Plaintiff's administrative segregation will apparently continue indefinitely thereafter (*Id*. at 13).

Plaintiff requests Defendants transfer him to another facility within NDOC, or to a facility in California or another state; however, the record makes clear that Defendants have repeatedly attempted to transfer Plaintiff to a facility out-of-state and, due to Plaintiff's extensive poor disciplinary record, other states are unwilling to accept Plaintiff (Doc. #42 at 13; *see also sealed* Doc. #31).  Plaintiff was previously housed in California for approximately

13

eleven (11) years.  Then on November 6, 1996, the California Department of Corrections requested Plaintiff be returned to NDOC due to ongoing disciplinary problems (Doc. #31). Plaintiff was also rejected by numerous states under the Interstate Corrections Compact, including the following: July 17, 1998, rejected by Idaho; July 29, 1998, rejected by North Dakota; July 30, 1998, rejected by Utah; August 28, 1998, rejected by Minnesota; September 2, 1998, rejected by Ohio; and September 15, 1998, rejected by Oregon (*Id*).  Plaintiff was subsequently transferred to Wyoming, only to again be returned to NDOC for ongoing disciplinary problems and increasingly violent behavior (*Id.*).  After Plaintiff's return from Wyoming, Defendants once again attempted to transfer Plaintiff to another state, but those states also rejected Plaintiff as follows: March 26, 2001, rejected by Colorado; July 12, 2002, rejected by New Mexico; October 1, 2002, rejected by Washington; February 11, 2005, rejected by Arizona; July 16, 2005, rejected by Montana; and August 24, 2005, rejected by Illinois (Doc. #31).

Plaintiff's extensive poor disciplinary history includes numerous violations, including multiple violations for possession of contraband, threats, disobeying orders, failure to submit to drug testing, possession of intoxicating substances, work stoppage, battery, failure to follow rules, use of banned substances and possession/sale of banned substances (*Id*.).  Plaintiff has been disciplined for manufacturing alcohol; mutual combat with another inmate; use of a controlled substance; possession of a syringe or hypodermic kit; battery on an inmate; possession of a weapon on Plaintiff's body; possession of drug paraphernalia, stimulants and sedatives; and control of marijuana (*Id*.).  Defendants also point out that Plaintiff and his wife are currently facing criminal charges for attempting to smuggle in a knife, escape key and drugs into ESP (Doc. #42 at 13).

Plaintiff's extensive poor disciplinary record clearly supports Defendants position that Plaintiff needs to be housed in a maximum security prison, as Plaintiff is clearly a security risk (*Id*. at 14).  ESP is Nevada's only maximum security prison and other states are unwilling to accept Plaintiff due to his disciplinary history.  Prison officials must be given "wide-ranging

14

deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 546-547 (1979); *see also Turner v. Safely*, 482 U.S. 78, 87-91 (1987). Here, Defendants have legitimate penological reasons for housing Plaintiff at ESP in disciplinary segregation and then in administrative segregation under protective custody. Furthermore, while Plaintiff alleges he is aware of other inmates being attacked at ESP and he has received threats from other Aryan gang members, Plaintiff has not alleged that he has been attacked by Aryan gang members, nor has he shown that he has come into any contact with the two (2) Neo-Nazi gang members since his disciplinary segregation, which is to continue for another year. While Plaintiff's concerns for his personal safety are legitimate, Plaintiff has made it nearly impossible for Defendants to transfer Plaintiff to another state with a maximum security prison and ESP is Nevada's only maximum security prison. Thus, Plaintiff has failed to show Defendants have disregarded a substantial risk to Plaintiff's personal safety. To the contrary, the record indicates Plaintiff's own behavior of not conducting himself more appropriately and maintaining acceptable standards of behavior under the Interstate Corrections Compact while housed in other states has forced Defendants to house Plaintiff at ESP. Under these facts, Plaintiff's confinement at ESP is warranted and does not rise to a level of deliberate indifference. Accordingly, Plaintiff is not likely to succeed on the merits of this claim and the facts and law do not clearly favor Plaintiff.

As previously discussed, if the harm factor favors the nonmoving party, a preliminary injunction may be granted only if the moving party can show a strong likelihood of success on the merits. *Immigrant Assistance Project,* 306 F.3d at 873. Furthermore, the critical element is the relative hardship to the parties and, under the continuum or sliding scale articulated in *Benda*, at an irreducible minimum, Plaintiff must show that there is a fair chance of success on the merits. 584 F.2d at 315. No chance of success at all will not suffice. *Id*. Additionally, since Plaintiff requests mandatory injunctive relief, he carries an even heavier burden of showing a likelihood of success on the merits. *Kikumura,* 242 F.3d at 955.

Plaintiff has failed to meet his burden. Here, the harm factor in transferring Plaintiff to a medium or minimum security facility given Plaintiff's disciplinary problems clearly favors Defendants. Furthermore, due to Plaintiff's disciplinary problems, the balance of hardships tips decidedly in Defendants favor. Thus, a preliminary injunction transferring Plaintiff to another facility should be **DENIED**.

## IV. CONCLUSION

Plaintiff has met his burden of showing a combination of probable success on the merits and a possibility of irreparable injury with regards to his medical condition. Plaintiff's back condition appears to have worsened over time and Plaintiff has not received the recommended course of treatment provided by Dr. Long. Plaintiff's condition is serious enough to prevent him from standing trial and his doctor, Dr. Long, has provided recommendations regarding treating Plaintiff's condition. Defendants have provided no contrary recommendations from other doctors; thus, Plaintiff is not merely disagreeing with the medical staff's course of treatment, but is requesting Defendants follow the recommended course of treatment. Thus, under these facts, a preliminary injunction ordering Defendants to follow Dr. Long's recommendations is warranted.

Plaintiff has failed to meet his burden of showing a combination of probable success on the merits and a possibility of irreparable injury with regards to his housing. Plaintiff has an extensive disciplinary history and has not only been rejected by numerous states as a candidate for transfer, but has been returned by two (2) states after transferring due to his disciplinary problems. The record supports Defendants decision to house Plaintiff in Nevada's only maximum security prison and the record shows Plaintiff is currently serving at least another year in disciplinary segregation with limited or no contact with other inmates. Under these facts, Plaintiff is not likely to succeed on the merits of this claim as he has failed to show Defendants acted with deliberate indifference to his personal safety in their decision to house Plaintiff at ESP. Accordingly, a preliminary injunction ordering Defendants to transfer Plaintiff to another facility should be denied.

16

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an order **GRANTING in part and DENYING in part** Plaintiff's Motion for Preliminary Injunction (Doc. #35) as follows:

    1)    A preliminary injunction ordering Defendants to follow Dr. Long's recommended course of treatment or ordering Defendants to send Plaintiff for another evaluation by an equivalent doctor and then following that doctor's recommended course of treatment should be **GRANTED**.

    2)    A preliminary injunction transferring Plaintiff to another facility should be **DENIED**.

The parties should be aware of the following:

    1.    That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

    2.    That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

    DATED:  May 27, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

17