1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

7
8

9   RICKEY EGBERTO,                          )         3:06-cv-0715-RCJ (RAM)
                                             )
10              Plaintiff,                   )         **REPORT AND RECOMMENDATION**
                                             )         **OF U.S. MAGISTRATE JUDGE**
11      vs.                                  )
                                             )
12   NEVADA DEPARTMENT OF                    )
     CORRECTIONS, et al.,                    )
13                                           )
                Defendants.                  )
14   _____)

15        This Report and Recommendation is made to the Honorable Robert C. Jones, United

16   States District Judge. The action was referred to the undersigned Magistrate Judge pursuant

17   to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is

18   Defendants' Motion for Summary Judgment. (Doc. #204.)[1] Plaintiff has opposed (Doc. #227),

19   and Defendants have replied (Doc. # 228). After a thorough review, the court recommends

20   that Defendants' motion be granted, in part, and denied, in part.

21                                **I. BACKGROUND**

22        Plaintiff Rickey Egberto (Plaintiff) is a prisoner in the custody of the Nevada

23   Department of Corrections (NDOC). (Pl.'s First Am. Compl. (Doc. #33).) The majority of the

24   allegations pertaining to Plaintiff's complaint took place when he was housed at Ely State

25   Prison (ESP) (*id*.); however, Plaintiff is currently housed at High Desert State Prison (High

26   Desert). (Pl.'s Opp. to Defs.' Mot for Summ. J. (Doc. # 227).) Plaintiff, a *pro se* litigant,

27

28   _____
          [1]      Refers to the court's docket number.

1    brings this action pursuant to 42 U.S.C. § 1983, alleging prison officials violated his Eighth

2    Amendment and Fourteenth Amendment rights. (Doc. # 33.) Plaintiff also asserts a state law

3    claim for negligence/gross negligence based on the same set of underlying facts.  (*Id.*)

4    Defendants are NDOC, and NDOC officials and employees Glen Whorton, Howard Skolnik, Ted

5    D'Amico, M.D., Robert Bannister, M.D., Adam Endel, Fritz Schlottman, and William Donat.

6         Plaintiff alleges Defendants failed to provide him with adequate medical care for his

7    back condition and failed to protect him from imminent danger by housing him in the same

8    prison as two white supremacist gang members against whom he testified at their murder trial.

9    (Doc. # 33 1-2.) Specifically, Plaintiff alleges Defendants denied him medical treatment for his

10   herniated lumbar discs by denying him surgery and proper medication for his excruciating back

11   pain. (*Id.* at 3-4.) Plaintiff further alleges Defendants housed him with two white supremacist

12   gang members against whom he testified in helping the State convict said gang members of the

13   murder of another inmate, which took place during a prison beating, witnessed by Plaintiff.

14   (*Id.* at 4.)  Plaintiff asserts he testified at the gang members' murder trial at great peril to

15   himself and was of the understanding that, because of his testimony, he would never be housed

16   at the same prison as the convicted murderers.  (*Id.*)  Plaintiff claims he has been subjected to

17   threats from other white supremacist gang members for many months.  (*Id.*)  Based on the

18   foregoing facts, Plaintiff alleges Defendants have acted with deliberate indifference toward his

19   serious medical needs and his personal safety.  (*Id.*)

20                        **II.  LEGAL STANDARD**

21        The purpose of summary judgment is to avoid unnecessary trials when there is no

22   dispute over the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

23   F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor

24   of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir.  2008)(citing *Anderson v.*

25   *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Summary judgment is appropriate if "the

26   pleadings, the discovery and disclosure materials on file, and any affidavits show that there is

27   no genuine issue as to any material fact and that the movant is entitled to judgment as a matter

28                                    2

of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.' In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)(citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court

1   need not consider the nonmoving party's evidence.  *See Adickes v.  S.H. Kress & Co.*, 398 U.S.

2   144, 159-60 (1970).

3        If the moving party satisfies its initial burden, the burden shifts to the opposing party

4   to establish that a genuine issue of material fact exists.  *See Matsushita Elec.  Indus.  Co.  v.*

5   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,

6   the opposing party need not establish a material issue of fact conclusively in its favor.  It is

7   sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

8   parties' differing versions of the truth at trial."  *T.W. Elec. Serv., Inc.  v.  Pac.  Elec.*

9   *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(citation omitted).  In other words, the

10  nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations

11  that are unsupported by factual data.  *See Taylor v.  List*, 880 F.2d 1040, 1045 (9th Cir.  1989)

12  (citation omitted).  Instead, the opposition must go beyond the assertions and allegations of

13  the pleadings and set forth specific facts by producing competent evidence that shows a

14  genuine issue for trial.  *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

15       At summary judgment, a court's function is not to weigh the evidence and determine the

16  truth but to determine whether there is a genuine issue for trial.  *See Anderson*, 477 U.S. at

17  249.  While the evidence of the nonmovant is "to be believed, and all justifiable inferences are

18  to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not

19  significantly probative, summary judgment may be granted.  *Id*. at 249-50, 255 (citations

20  omitted).

21                          **III.  DISCUSSION**

22  **A.    CLAIMS ASSERTED AGAINST NDOC**

23       Plaintiff names NDOC as a defendant in this action.  The Eleventh Amendment bars

24  suits against state agencies as they are considered an "arm of the state" and not a "person" for

25  the purpose of § 1983.  *See Hyland v.  Wonder*, 117 F.3d 405, 413 (9th Cir.  1997), *amended*,

26  127 F.3d 1135 (9th Cir.  1997); *Doe v.  Lawrence Livermore Nat.  Laboratory*, 131 F.3d 836

27  (9th Cir.  1997); *Lucas v.  Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir.  1995).  Therefore,

28                                    4

1  the NDOC should be dismissed from this action.

2  **B.    EIGHTH AMENDMENT**

3      Plaintiff's First Amended Complaint alleges violations of Plaintiff's Eighth and
4  Fourteenth Amendment rights based on Defendants' alleged denial of proper medical
5  treatment and deliberate indifference to Plaintiff's health and safety.  (Doc. # 33.)  Plaintiff's
6  status as an inmate determines the appropriate standard for evaluating Plaintiff's conditions
7  of confinement claims.  The Eighth Amendment applies to "convicted prisoners."  *See Whitley*
8  *v. Albers*, 475 U.S. 312, 318-19 (1986); *Bell v . Wolfish*, 441 U.S. 520, 536 n. 16 (1979); *Jones*
9  *v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986).  The more protective Fourteenth Amendment
10 standard applies to conditions of confinement when detainees have not been convicted.  *See*
11 *Bell*, 441 U.S. at 535-37; *see also Gary H. Hergstrom*, 831 F.2d 1430 (9th Cir. 1987).  Here,
12 Plaintiff has been convicted; therefore, the Eighth Amendment standard applies to Plaintiff's
13 claims.  In addition, "[w]here a particular amendment 'provides an explicit textual source of
14 constitutional protection' against a particular sort of governmental behavior, 'that Amendment,
15 not the more generalized notion of "substantive due process," must be the guide for analyzing
16 [a plaintiff's] claims.'"  *Albright v. Oliver*, 510 U.S. 266, 273-74 (1994), Rehnquist, C.J., for
17 plurality (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Therefore, Plaintiff's claims
18 will be analyzed under the Eighth Amendment right to be free from cruel and unusual
19 punishment rather than any generalized notions of due process under the Fourteenth
20 Amendment.

21     **1.    Personal Safety**

22     Plaintiff claims that he has been in danger of serious bodily harm from white
23 supremacists due to assistance he provided in the prosecution of two white supremacist gang
24 members in 1998 and 1999.  (Doc. # 227 2-3, 22.)

25     Defendants argue they have not been deliberately indifferent to a serious risk to
26 Plaintiff's health and safety.  (Defs.' Mot. for Summ. J. (Doc. # 204) 11.)  Instead, Defendants
27 maintain that NDOC has been responsive to any threat to Plaintiff's health and safety, and

28                                              5

there is no evidence that NDOC failed to protect his safety. (*Id*.) Specifically, Defendants point out that Plaintiff has not been attacked or harmed during the time period he has been housed at NDOC. (*Id*.) In addition, Defendants argue that even if there was an ongoing threat to Plaintiff's safety: (1) his poor disciplinary history has resulted in the denial of interstate transfer; and (2) they have taken reasonable steps to protect him by classifying him as close custody where he is not permitted contact with other inmates, including his perceived enemies. (*Id*. at 11-12.)

In his opposition, Plaintiff argues that after he assisted in the successful prosecution of two white supremacist gang members for murder of a fellow inmate, he was housed at ESP with these two convicted gang members. (Doc. # 227 22.) Plaintiff states that the argument that Plaintiff must remain at ESP, Nevada's only maximum security prison, is flawed because he was recently transferred to High Desert, a medium security prison. (*Id*. at 23.) Plaintiff also argues that security in Plaintiff's housing unit at ESP was often lax, and because the two inmates he helped convict reside at ESP, he was subject to unnecessary risk. (*Id*.) Plaintiff cites one instance on a bus from Nevada State Prison (NSP) to ESP where a white supremacist gang member held a razor blade to his throat. (*Id*.)

### a.    Standard

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 932 (1994)(quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

This issue was specifically addressed by the United States Supreme Court in *Farmer*. "[P]rison officials have a duty…to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citations and quotations omitted). "Having incarcerated

6

1  'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,'

2  having stripped them of virtually every means of self-protection and foreclosed their access to

3  outside aid, the government and its officials are not free to let the state of nature take its

4  course." *Id.* (internal citations omitted).  "Being violently assaulted in prison is simply not

5  'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.*  at 834

6  (citing *Rhodes*, 452 U.S. at 347).

7         To establish a violation of this duty, the prisoner must establish that prison officials were

8  "deliberately indifferent" to serious threats to the inmate's safety.  *Farmer*, 511 U.S. at 834.

9  Under the deliberate indifference standard, a violation of the Eighth Amendment is only found

10  when an objective and subjective component are met.  *Id.*  First, "the deprivation alleged must

11  be, objectively, sufficiently serious…; a prison official's act or omission must result in the denial

12  of 'the minimal civilized measures of life's necessities.'" *Id.* (citations and quotations omitted).

13  When a plaintiff claims prison official's failed to take reasonable steps to protect, the plaintiff

14  must show that "he is incarcerated under conditions posing a substantial risk of serious harm."

15  *Id.* (citations omitted).

16         Second, the inmate must satisfy the subjective element.  This means that the prison

17  official must "know of and disregard an excessive risk to inmate health or safety; the official

18  must both be aware of facts from which the inference could be drawn that a substantial risk of

19  serious harm exists, and he must also draw the inference."  *Id.* at 837.  "Mere negligence is not

20  sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir.  1998).  Prison

21  officials may avoid liability by: (1) proving they were unaware of the risk, or (2) proving they

22  "responded reasonably to the risk, even if the harm ultimately was not averted."  *Farmer*, 511

23  U.S. at 844-45.

24         Therefore, in order to meet their burden on summary judgment, Defendants must

25  provide evidence establishing: (1) that the deprivation suffered by Plaintiff is not sufficiently

26  serious; or (2) that no defendant knew of and acted with deliberate indifference toward

27  Plaintiff's risk of harm.  *Farmer*, 511 U.S. at 834-35.  To avoid summary judgment, Plaintiff

28

7

1    must show that the alleged deprivation was sufficiently serious -that he faced a substantial risk

2    of serious harm-and that the prison officials' conduct constituted deliberate indifference.  *Id*.

3                        **b.    Analysis**

4         Here, Defendants do not dispute that Plaintiff faces a substantial risk of serious harm

5    if he comes into contact with white supremacist gang members, and in particular, the two white

6    supremacist gang members against whom Plaintiff testified who were also housed at ESP.

7    (Defs.' Reply in Supp. of Mot. for Summ. J. (Doc. # 228) 9.)  Rather, Defendants insist that

8    they responded reasonably to that risk.  (*Id*. ("Defendants have never disputed that Plaintiff

9    faced a substantial risk of serious harm if he came into contact with the two Aryan gang

10   members against whom he testified who were also housed at ESP").)

11        Defendants argue that Plaintiff was in no danger at ESP because he has always been in

12   some form of protective custody.  (Doc. # 204 5, Ex. E.)  Defendants produce evidence that

13   while housed at ESP, Plaintiff has been celled in either segregated confinement or the prison

14   infirmary due to his close custody classification.  (*Id*., *see also* Ex. E and Ex. G.)  Plaintiff's

15   custody classification is due to the assistance he provided in the criminal prosecution of the two

16   white supremacist gang members.  (Doc. # 204 Ex. G at ¶ 4.)  According to Defendants, in his

17   confinement, Plaintiff has celled alone and conducted all out of cell movement alone, and has

18   been precluded from face-to-face contact with any other inmate.  (*Id*. at ¶ 5.)

19        Plaintiff continuously requested that he be transferred to another facility within NDOC,

20   or to an out-of-state facility; however, the record is clear that Defendants repeatedly attempted

21   to transfer Plaintiff to an out-of-state facility, but due to Plaintiff's extensive disciplinary

22   record, no other state has been willing to accept Plaintiff.  (Doc. # 204 Ex. C at 125-150.)  In

23   fact, Plaintiff was previously housed in California for a period of eleven (11) years.  (*Id*. at 125,

24   Ex. F at ¶ 8.)  Then on November 6, 1996, the California Department of Corrections requested

25   Plaintiff be returned to NDOC, citing ongoing disciplinary problems.  (Doc. # 204 Ex. C at 125-

26   138.)  Plaintiff was also rejected by numerous states under the Interstate Corrections Compact

27   including the following: July 17, 1998, rejected by Idaho; July 29, 1998, rejected by North

28

                                    8

Dakota; July 30, 1998, rejected by Utah; August 28, 1998, rejected by Minnesota; September 2, 1998, rejected by Ohio; and September 9, 1998, rejected by Oregon. (*Id.* at 139-147.) Plaintiff was subsequently transferred to Wyoming, only to again be returned to NDOC for ongoing disciplinary problems and increasingly violent behavior. (*Id.* at 144, 148-153, Ex. F at ¶ 10.) After Plaintiff's return from Wyoming, Defendants once again attempted to transfer Plaintiff to another state, but those states also rejected Plaintiff as follows: March 26, 2001, rejected by Colorado; July 12, 2002, rejected by New Mexico; October 1, 2002, rejected by Washington; February 11, 2005, rejected by Arizona; July 16, 2005, rejected by Montana; and August 24, 2005, rejected by Illinois. (Doc. # 204 Ex. C at 154-159.)

Plaintiff's extensive poor disciplinary history includes numerous violations, including multiple violations for possession of contraband, threats, disobeying orders, failure to submit to drug testing, possession of intoxicating substances, work stoppage, battery, failure to follow rules, use of banned substances and possession/sale of banned substances. (Doc. # 204 Ex. C at 119-124, Ex. D at 162-166.) Plaintiff has been disciplined for manufacturing alcohol; mutual combat with another inmate; use of a controlled substance; possession of a syringe or hypodermic kit; battery on an inmate; possession of a weapon on Plaintiff's body; possession of drug paraphernalia, stimulants and sedatives; and control of marijuana. (*Id.*)

Plaintiff's poor disciplinary history supports Defendants position that Plaintiff is a security risk. (Doc. # 204 Ex. C at 119-124.) Moreover, other states are unwilling to accept Plaintiff due to his poor disciplinary history. In addition, in a recent development, Plaintiff was transferred to High Desert in October 2010. (Doc. # 227 22.) Defendants address this transfer in their reply brief stating that "High Desert is now capable of housing long-term, protective custody prisons such as Plaintiff. [Plaintiff] is still classified as a maximum, or close custody, inmate." (Doc. # 228 9.) While Defendants do not submit evidence of High Desert's current capabilities, that fact is not essential to the court's determination.

Prison officials must be given "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and

discipline to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979); *see also Turner v. Safely*, 482 U.S. 78, 87-91 (1987). Here, Defendants had legitimate penological reasons for housing Plaintiff at ESP. The court's analysis does not change in light of Plaintiff's transfer to High Desert because the court finds that this does not discount the legitimate penological reasons they had for keeping Plaintiff at ESP, a maximum security facility. Moreover, while he was housed at ESP, Defendants took reasonable steps to ensure Plaintiff's safety. Plaintiff was under a protective custody classification, and precluded from coming into contact with other inmates. Furthermore, while Plaintiff alleges he is aware of other inmates being attacked at ESP and that he has received threats from other white supremacist gang members, there is no evidence to suggest that Plaintiff has been attacked by white supremacists. Plaintiff does present an affidavit wherein he states that in August 2005, he was placed handcuffed into a cell in the visiting area of ESP with one of the defendants against whom he testified, and that he was put on a unit with one of the defendants and a member of the Aryan Warriors. (Doc. # 227 Ex. 92.) Plaintiff does not describe the circumstances any further, and does not set forth evidence showing that either of these particular incidents placed him at a substantial risk of serious harm or that Defendants failed to take reasonable steps to protect him under these circumstances. Plaintiff also asserts that on July 3, 2008, he was placed on a bus with a member of the Aryan Brothers, but again does not set forth evidence to establish Defendants did not take reasonable steps to avoid a substantial risk of serious harm. While Plaintiff's concerns for his safety are legitimate, Plaintiff has made it nearly impossible for Defendants to transfer him to another state, and Defendants appear to have taken reasonable precautions to ensure Plaintiff's safety. Defendants have met their burden by establishing that they responded reasonably to the risks posed to Plaintiff's safety. Plaintiff, on the other hand, has failed to show that Defendants disregarded a substantial risk to Plaintiff's safety. To the contrary, the record indicates Plaintiff's own behavior of not conducting himself more appropriately and maintaining acceptable standards of behavior under the Interstate Corrections Compact while housed in other states forced Defendants to

10

1   house Plaintiff within the state of Nevada.  Defendants decision to keep Plaintiff at ESP, a

2   maximum security facility, was supported by legitimate penological purposes.  Moreover,

3   Plaintiff is now housed at High Desert.  Under these facts, Plaintiff's confinement at ESP, and

4   now High Desert, is warranted and does not rise to the level of deliberate indifference.

5   Accordingly, summary judgment should be granted as to Plaintiff's claim that Defendants knew

6   of and disregarded a substantial risk of serious harm to Plaintiff.

7           **2.      Serious Medical Needs**

8           Plaintiff claims that he was denied adequate medical care for degenerative disc disease

9   and foraminal stenosis of the lumbar spine.  (Doc. # 227 2.)

10          Defendants argue: (1) there is no objective evidence that Plaintiff has a serious medical

11  need; and (2) that they have provided Plaintiff with appropriate care.  (Doc. # 204 12-14.)

12  Defendants assert that the medical records instead support a conclusion that Plaintiff is

13  malingering.  (*Id*.  at 13.)  Defendants point to Dr.  Koehn's review of Plaintiff's medical

14  records, revealing sixteen instances in two years where Plaintiff was observed performing

15  normal daily functions, without limitation.  (*Id*.)  In addition, Defendants argue that the

16  medical evidence demonstrates that Plaintiff's complaints of pain are contrived in an effort to

17  obtain pain medication and a cane or walker, potential weapons.  (*Id*.)  Finally, Defendants

18  maintain that despite the absence of a serious medical need, NDOC has provided Plaintiff with

19  an appropriate, albeit conservative, course of treatment.  (*Id*.)

20          **a.      Standard**

21          A prisoner can establish an Eighth Amendment violation arising from deficient medical

22  care if he can prove that prison officials were deliberately indifferent to a serious medical need.

23  *Estelle v.  Gamble*, 429 U.S. 97, 104 (1976).  In *Estelle*, the Supreme Court determined that

24  deliberate indifference to a prisoner's serious medical needs constitutes the "unnecessary and

25  wanton infliction of pain" proscribed by the Eighth Amendment.  "This is true whether the

26  indifference is manifested by prison doctors in their response to the prisoner's needs or by

27

28                                              11

1    prison guards in intentionally denying or delaying access to medical care or intentionally

2    interfering with the treatment once proscribed." *Estelle*, 429 U.S. at 104-105.

3          A finding of deliberate indifference involves the examination of two elements: the

4    seriousness of the prisoner's medical need and the nature of the defendant's responses to that

5    need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds,*

6    *WMX Techs, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). A "serious" medical need

7    exists if the failure to treat a prisoner's conditions could lead to further injury or the

8    "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). Examples

9    of conditions that are "serious" in nature include an injury that a reasonable doctor or patient

10   would find important and worthy of comment or treatment, a medical condition that

11   significantly affects an individual's daily activities, or the existence of chronic and substantial

12   pain. *McGuckin*, 974 F.2d at 1060; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.

13   2000).

14         If the medical needs are serious, the plaintiff must show that the defendant acted with

15   deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a

16   high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). The plaintiff

17   must demonstrate that the prison medical staff knew of and disregarded an excessive risk to

18   his health. *Farmer*, 511 U.S. at 837. Deliberate indifference entails something more than

19   medical malpractice or even gross negligence. *Toguchi*, 390 F.3d at 1061. Inadvertence, by

20   itself, is insufficient to establish a cause of action under § 1983. *McGuckin*, 974 F.3d at 1060.

21   Instead, as stated above in the court's analysis concerning Plaintiff's failure to protect claim,

22   deliberate indifference is only present when a prison official "knows of and disregards an

23   excessive risk" to an inmate's health and safety. *Clement v. Gomez*, 298 F.3d 898, 904 (9th

24   Cir. 2003)(quoting *Farmer*, 511 U.S. at 858). "Prison officials are deliberately indifferent to

25   a prisoner's serious medical needs when they deny, delay, or intentionally interfere with

26   medical treatment" or the express orders of a prisoner's prior physician for reasons unrelated

27   to the medical needs of the prisoner. *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992);

28                                                        12

1    *Hunt v.  Dental Dep't.*, 865 F.2d 198, 201 (9th Cir.  1989)(citations omitted).  Where delay in

2    receiving medical treatment is alleged, however, a prisoner must demonstrate that the delay

3    led to further injury.  *McGuckin*, 974 F.2d at 1060.

4         In addition, a prison physician is not deliberately indifferent to an inmate's serious

5    medical needs when the physician prescribes a different method of treatment than that

6    requested by the inmate.  *Franklin v.  Oregon*, 662 F.2d 1337, 1344 (9th Cir.  1981).  To

7    establish that a difference of opinion amounted to deliberate indifference, the prisoner "must

8    show that the course of treatment the doctors chose was medically unacceptable under the

9    circumstances" and "that they chose this course in conscious disregard of an excessive risk to

10   [the prisoner's health]."  *Jackson v.  McIntosh*, 90 F.3d 330, 332 (9th Cir.  1996).

11                              **b.    Analysis**

12        Here, Plaintiff alleges Defendants have denied him proper medical treatment for his

13   excruciating back pain since 2005.  (Doc. # 33 ¶¶ 17-20.)  Defendants first argue that there is

14   no objective evidence that Plaintiff has a serious medical need, but instead, the medical

15   evidence supports a conclusion that Plaintiff is malingering because he has been observed

16   performing normal daily functions.  (Doc. # 204 12-14.)  Defendants assert that Plaintiff's

17   complaints are contrived in an effort to obtain pain medication and potential weapons in the

18   form of a cane or walker.  (*Id*.)  In short, after conducting a thorough review of the medical

19   evidence presented, the court finds that Defendants argument is simply belied by the record.

20                          **I.    Serious Medical Need**

21        Defendants have not met their burden of showing the absence of a genuine dispute of

22   fact as to whether Plaintiff has a serious medical need.  Instead, as an objective matter, Plaintiff

23   produced sufficient evidence such that a reasonable jury could find that he suffered a

24   "sufficiently serious deprivation."  *Farmer*, 511 U.S. at 834.  The evidence supports Plaintiff's

25   allegation that he suffers from excruciating back pain, demonstrated by the numerous

26   references in the record to his pain, the evaluation and acknowledgment of this pain as set forth

27   in the medical records, and Plaintiff's inability to stand trial due to his medical condition.

28                                   13

1
2

### ii. Knowing Disregard of an Excessive Risk to Plaintiff's Health

3  After a thorough review of the evidence presented in this matter, the court finds that as
4  to the subjective element, Defendants have not shown the absence of a genuine issue of
5  material fact regarding whether Defendants acted with deliberate indifference to Plaintiff's
6  serious medical needs. Plaintiff has produced sufficient evidence to create a triable issue of
7  material fact on this claim so that a reasonable jury could conclude that Defendants knew of
8  and disregarded an excessive risk to Plaintiff's health. Plaintiff has produced extensive
9  evidence to show that Defendants were well aware of the seriousness of Plaintiff's condition.
10 This evidence includes the opinions of Dr. Long, letters from Plaintiff's wife describing
11 Plaintiff's condition and the perceived inadequacy of care he was receiving, and countless
12 medical kites and grievances requesting medical evaluation, pain medication, and assistance
13 in the form of a cane and/or walker, as well as progress notes documenting Plaintiff's requests
14 for treatment and medication. The evidence could lead a trier of fact to determine that
15 Defendants failed to act despite having knowledge of a substantial risk of serious harm.
16 *Farmer*, 511 U.S. at 842. A reasonable jury could also conclude that Defendants denied and
17 delayed Plaintiff's access to medical care by refusing to follow the suggested course of
18 treatment for Plaintiff's condition and, instead, merely prescribing pain medication. There is
19 also a dispute regarding the adequacy of the prescription of pain medication. Plaintiff presents
20 countless medical kites requesting pain medication which were met with varying responses that
21 indicate Plaintiff's receipt of pain medication was inconsistent, at best. The evidence certainly
22 creates a factual dispute as to the adequacy of care Plaintiff was receiving at ESP.

23 The evidence reveals that on varying occasions Dr. Long opined that Plaintiff suffered
24 from chronic back pain and recommended some form of treatment, including pain medication
25 and the use of a cane or walker, and even surgery at one point. In addition, based on Dr.
26 Long's evaluations of Plaintiff, he did not believe Plaintiff would be able to conduct his defense
27 and stand trial. Dr. Long's opinions later become contradictory. For example, as late as
28

14

1   September 2009, Dr. Long recommended a walker, stating that it "would be a good idea,"

2   (Doc. # 227 Ex. 77), in February 2010, Dr. Long recognized Plaintiff's persistent pain but

3   determined that he would not recommend any further treatment and concluded that there was

4   no indication for narcotics or assistance (Doc. # 204 Ex. A at 12-14.)

5       Dr. Gedney also examined Plaintiff and ordered that he be provided with a walker for

6   assistance. Dr. Koehn, whose opinions Defendants rely on in support of their motion, even

7   recommended that Plaintiff receive a cane for assistance. Yet, despite all of these

8   recommendations and specific findings that assistance was medically necessary, Defendants

9   failed to provide Plaintiff with this assistance or recommended follow up treatment for his

10  medical condition. Plaintiff consistently made Defendants aware of his medical condition and

11  requested treatment and pain medication. Plaintiff's requests were met with inconsistent

12  results. A fact finder could reasonably conclude from the medical evidence that Defendants

13  often denied or delayed Plaintiff's access to medical care.

14      Because Plaintiff has produced evidence sufficient to allow a reasonable jury to conclude

15  that Defendants were deliberately indifferent to Plaintiff's serious medical needs, summary

16  judgment should be denied.

17  **C.    STATE LAW CLAIMS**

18      Plaintiff's second cause of action is for Negligence/Gross Negligence. (Doc. # 33 ¶¶ 21-

19  24.) Plaintiff alleges that Defendants had a duty to act with reasonable care in rendering

20  medical treatment to Plaintiff and breached such duty in denying Plaintiff access to adequate

21  and competent medical treatment, care and facilities, and/or in their refusal to allow Plaintiff's

22  to be examined and/or treated by independent physicians. (*Id.*) As a result of this breach,

23  Plaintiff asserts that he was subjected to an excessive risk to his personal safety. (*Id.*)

24      Defendants argue that Plaintiff's claim of medical malpractice fails because he did not

25  attach the affidavit of a medical expert as required by NRS 41A.071. (Doc. # 204 15.) Plaintiff

26  has not asserted a claim under NRS 41A.071. Instead, Plaintiff merely asserts a claim for

27  negligence/gross negligence. (Doc. # 33 ¶¶ 21-24.) Defendants' remaining argument

28                                      15

concerning Plaintiff's negligence claim goes to Plaintiff's claim that Defendants were deliberately indifferent to a substantial risk of harm, and not to his serious medical needs claim. (Doc. # 204 15.) The court has recommended that summary judgment be granted on this claim, and therefore this argument is no longer applicable.

Because Defendants have not met their burden of showing the absence of a genuine issue of material fact with respect to Plaintiff's negligence claim, summary judgment should be denied as to this claim.

**D.    PERSONAL PARTICIPATION**

Defendants argue that none of the named defendants were personally involved in any decision placing Plaintiff's health or safety at risk. (Doc. # 204 14.)

A claim brought under 42 U.S.C. § 1983 requires a specific relationship between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)(citation omitted).

In addition, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior*. When a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Plaintiff must allege facts indicating that a supervisory defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented a policy "so deficient that the policy itself is a repudiation of constitutional

rights" and is "the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Defendants, as the moving parties, bear the burden of informing the court of the basis for their motion, together with *evidence* demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). While Defendants argue that none of them personally participated in Plaintiff's alleged constitutional violations, they do not present any evidence of their lack of personal participation in the form of a declaration or affidavit or otherwise. Defendants have not produced evidence sufficient to shift the burden to Plaintiff to produce evidence showing Defendants' personal participation. Moreover, Defendants do even not go so far as to say that they did not personally participate in the alleged constitutional violations, but merely state that "it does not appear that any of these defendants were personally involved..." (Doc. # 204 14.) Because Defendants fail to provide any evidence, or even a clear explanation, to demonstrate a lack of personal involvement, summary judgment should be denied on this ground.

**E.    QUALIFIED IMMUNITY**

Defendants argue that there is no evidence of a constitutional violation, and that under the circumstances, Defendants could not have believed that providing continuous medical treatment for Plaintiff's unsubstantiated complaints violated the Eighth Amendment. (Doc. # 204 15.)

"[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815 (2009) (citation and internal quotations omitted). Under certain circumstances, state officials are entitled to qualified immunity when sued in their personal capacities. *Carey v. Nev. Gaming Control Bd.*, 279 F.3d 873, 879 (9th Cir. 2002). When a state official reasonably believes his or her acts were lawful in light of clearly established law and the information they possessed, the official may claim qualified immunity. *Hunter v.*

17

1   *Bryant*, 502 U.S. 224, 227 (1991) (per curiam); *Orin v.  Barclay*, 272 F.3d 1207, 1214 (9th Cir.

2   2001).  Where "the law did not put the officer on notice that his conduct would be clearly

3   unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v.  Katz*,

4   533 U.S. 194, 202 (2001), *abrogated on other grounds in Pearson v. Callahan*, 555 U.S. 223

5   (2009) *(*"while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be

6   regarded as mandatory").

7       In analyzing whether a defendant is entitled to qualified immunity, the court must

8   consider two issues.  The court must determine whether the plaintiff alleges a deprivation of

9   a constitutional right, assuming the truth of his factual allegations, and whether the right at

10  issue was "clearly established" at the time of defendant's alleged misconduct.  *Clouthier v.*

11  *County of Contra Costa*, 591 F.3d 1232, 1241 (2010) (quoting *Pearson*, 555 U.S. 223, 129 S.Ct.

12  808, 816 (2009)).  "Whether a right is clearly established turns on the 'objective legal

13  reasonableness of the action, assessed in light of the legal rules that were clearly established

14  at the time it was taken.'" *Id*. (quoting *Pearson*, 555 U.S. 223, 129 S.Ct.  at 822).

15      The court finds that an Eighth Amendment claim for deliberate indifference to Plaintiff's

16  serious medical needs is presented under the facts alleged by Plaintiff.   Moreover, the court

17  finds that it would be clear to a reasonable NDOC employee knowing Plaintiff's condition that

18  denial or delay of medical care so as to disregard a serious risk to his health would be

19  unconstitutional.  The general law regarding the Eighth Amendment was clearly established

20  at the time periods in question in this case.  *See Farmer v.  Brennan*, 511 U.S. 825 (1994);

21  *Toguchi v.  Chung*, 391 F.3d 1051, 1060 (9th Cir.  2004).

22      Upon resolution of factual issues, prison officials may be relieved of any liability in this

23  case.  However, if Plaintiff's version of the facts were to prevail at trial, a jury may conclude that

24  the prison officials were deliberately indifferent to Plaintiff's serious medical needs.  Under

25  such circumstances, the prison officials' actions are not protected by qualified immunity.  Thus,

26  summary judgment is inappropriate on this ground.

27

28                                                      18

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** in part and **DENYING** in part Defendants' Motion for Summary Judgment as follows:

- Summary Judgment should be granted as to NDOC;

- Summary Judgment should be granted as to Plaintiff's Eighth Amendment claim that Defendants were deliberately indifferent to a serious risk to his safety;

- Summary Judgment Should be denied as to Plaintiff's Eighth Amendment claim that Defendants were deliberately indifferent to Plaintiff's serious medical needs; and

- Summary Judgment should be denied as to Plaintiff's claim for negligence/gross negligence.

The parties should be aware of the following:

1.     That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED:  January 24, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

19