1
2
3
4
5

6                    **UNITED STATES DISTRICT COURT**
                          **DISTRICT OF NEVADA**
7

8

9   RICKEY EGBERTO,                    )
                                       )
10              Plaintiff,             )
                                       )        3:06-cv-0715-RCJ-WGC
11       vs.                           )
                                       )
12  NEVADA DEPARTMENT OF               )            **ORDER**
    CORRECTIONS et al.,                )
13                                     )
                Defendants.            )
14  _____   )

15          This case arises out of Defendants' alleged deliberate indifference to Plaintiff's medical

16  needs in prison, in violation of the Eighth and Fourteenth Amendments.  Plaintiff also alleges

17  negligence under state law.  Pending before the Court is the Magistrate Judge's ("MJ") Report and

18  Recommendation ("R&R") (ECF No. 230) on Defendants' Motion for Summary Judgment (ECF

19  No. 204).  For the reasons given herein, the Court adopts the R&R in part and rejects it in part and

20  grants the motion.

21  **I.      FACTS AND PROCEDURAL HISTORY**

22          Plaintiff Rickey Egberto is incarcerated with the Nevada Department of Corrections

23  ("NDOC"). (First Am. Compl. ¶ 17, ECF No. 33).  Plaintiff, who alleges he has two herniated discs

24  in his spine, has been given medication for the pain, but has been denied surgery. (*Id.*).  Plaintiff

25  alleges that the infirmary at Ely State Prison ("ESP"), where he is currently incarcerated, has a

26  custom and practice of failing to properly diagnose, treat, and medicate inmates, and he argues that

27  this constitutes deliberate indifference. (*Id.*).  Plaintiff also alleges that two neo-Nazi gang members,

28  against whom he testified, are incarcerated at ESP, counter to Plaintiff's "understanding" that they

would be incarcerated elsewhere. (*Id.*).  He alleges that he has received death threats from these inmates, and he argues that the failure to house them elsewhere constitutes deliberate indifference by NDOC. (*Id.*).

On December 22, 2006, Plaintiff sued NDOC in this Court on three causes of action: (1)–(2) substantive due process and equal protection violations under the Fourteenth Amendment and deliberate indifference violations under the Eighth and Fourteenth Amendments, via 42 U.S.C. § 1983; and (3) state law negligence.  Plaintiff amended the complaint on July 17, 2007 to add the following Defendants: Glen Whorton, Howard Skolnik, Ted D'Amico, M.D., Robert Bannister, M.D., E.K. McDaniels, Adam Endel, Fritts Schlottman, and William Donat.  The First Amended Complaint ("FAC") adds no new causes of action but consolidates the first two causes of action into one.

On November 3, 2009, the Court adopted the MJ's R&R (ECF No. 55), granting Plaintiff's Motion for Preliminary Injunction (ECF No. 35) in part; Defendants were ordered to follow Dr. Long's recommended course of treatment or send Plaintiff for another evaluation by an equivalent doctor and follow that doctor's recommended course of treatment, but Defendants were not required to transfer Plaintiff to another facility. (*See* Order 2–3, Nov. 2, 2009, ECF No. 124).  On March 3, 2010, the MJ held a telephonic hearing and denied a Motion to Enforce Order (ECF No. 128), a Motion to Preclude Deputy AG from Blocking, Hindering, or Interfering (ECF No. 133), a Motion for Order to Show Cause (ECF No. 145), and Motion for Sanctions (ECF No. 146).  The MJ denied those motions after reviewing a medical report that concluded nothing was wrong with Plaintiff's spine based upon an MRI scan, (*see* Hr'g Mar. 3, 2010, at 9:03 a.m.), records indicating that Plaintiff had refused medication at various times, (*id.* at 9:04 a.m.), a report by Dr. Kohn (phonetic) indicating that Drs. Kohn and Long were in agreement that Plaintiff was malingering in order to acquire access to narcotics and an unneeded cane, possibly for use as a weapon, (*id.* at 9:05 a.m.), and evidence that many people had seen Plaintiff walk without any limp or other difficulty and that he only walked with a limp when being seen by medical personnel, (*id.* at 9:06–07 a.m.).  The MJ found that Defendants were in compliance with this Court's November 2, 2009 order. (*See id.* at 9:09–10 a.m.;

1  Minute Order, Mar. 3, 2010, ECF No. 166).

2       Plaintiff filed a Notice of Appeal (ECF No. 170) and a Motion for Reconsideration of

3  Magistrate Judge's Order (ECF No. 172), which this Court denied. (*See* Order, Aug. 24, 2010, ECF

4  No. 210).  Plaintiff also filed a Motion for Court Ordered Transportation to Independent Medical

5  Exam (ECF No. 176) and a Motion for Court Ordered Medical Expert (ECF No. 179), both of which

6  the MJ treated as motions to reconsider and denied. (*See* Mag. J. Order, May 6, 2010, ECF No. 191).

7  Plaintiff filed two more motions, asking this Court to review the May 6, 2010 order of the MJ

8  denying Motions Nos. 176 and 179.  The Court denied those motions. (*See* Order, ECF No. 215).

9  The Court of Appeals dismissed Plaintiff's appeal for failure to respond to one of its orders.  In the

10  meantime, Defendants had filed the present motion for summary judgment.

11  **II.    SUMMARY JUDGMENT STANDARDS**

12       A court must grant summary judgment when "the movant shows that there is no genuine

13  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

14  Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v.*

15  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is

16  sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A

17  principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."

18  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In determining summary judgment, a court

19  uses a burden-shifting scheme:

20       When the party moving for summary judgment would bear the burden of proof at trial,
         it must come forward with evidence which would entitle it to a directed verdict if the
21       evidence went uncontroverted at trial.  In such a case, the moving party has the initial
         burden of establishing the absence of a genuine issue of fact on each issue material to its
22       case.

23  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations

24  and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden of

25  proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting

26  evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that

27  the nonmoving party failed to make a showing sufficient to establish an element essential to that

28
                                              3

party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.    ANALYSIS

### A.    Claims Against NDOC

The Eleventh Amendment prohibits suits against states in federal court without their consent. In a parallel but independent analysis, § 1983 only creates jurisdiction for suits against "persons." Neither a state nor its employees acting in their official capacities are "person[s]" who can be sued under § 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989), but state employees may be sued in their individual capacities as "persons" under § 1983, *Hafer v. Melo*, 502 U.S. 21, 27

1   (1991).  State employees sued in their individual capacities for injunctive relief or for damages to be

2   paid out of their private resources are not protected by a state's Eleventh Amendment immunity.

3   *Edelman v. Jordan*, 415 U.S. 651, 664–65, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ex parte Young*,

4   209 U.S. 123, 159–60 (1908).  NDOC is an arm of the State of Nevada and is therefore entitled to

5   summary judgment as a matter of law.

6   **B.      Eighth Amendment**

7          The FAC alleges violations of Plaintiff's Eighth and Fourteenth Amendment rights based

8   upon Defendants' alleged denial of proper medical treatment and deliberate indifference to Plaintiff's

9   health and safety.  The Eighth Amendment applies to "convicted prisoners," such as Plaintiff. *See*

10  *Whitley v. Albers*, 475 U.S. 312, 318–19 (1986); *Bell v. Wolfish*, 441 U.S. 520, 536 n.16 (1979);

11  *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986).  Where a particular amendment of the Bill of

12  Rights governs a claim, no separate "substantive due process" claim lies. *Graham v. Connor*, 490

13  U.S. 386, 395 (1989).  Therefore, Plaintiff's claims fall purely under the Eighth Amendment.

14         Under the Eighth Amendment, prison conditions should not "involve the wanton and

15  unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting

16  imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Although prison conditions may

17  be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate

18  food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety

19  of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 932 (1994) (quoting *Hudson v. Palmer*, 486 U.S.

20  517, 526–27 (1984)).

21          "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other

22  prisoners." *Id.* at 833 (citations and quotations omitted).  "Having incarcerated 'persons [with]

23  demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,' having stripped them

24  of virtually every means of self-protection and foreclosed their access to outside aid, the government

25  and its officials are not free to let the state of nature take its course." *Id*. (internal citations omitted).

26  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for

27  their offenses against society.'" *Id*. at 834 (citing *Rhodes*, 452 U.S. at 347).  To establish a violation

28

of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Id.* at 834. Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when both an objective and a subjective component are met. *Id.* First, "the deprivation alleged must be, objectively, sufficiently serious . . . ; a prison official's act or omission must result in the denial of 'the minimal civilized measures of life's necessities.'" *Id.* (citations and quotations omitted). When a plaintiff alleges that prison officials failed to take reasonable steps to protect him, the plaintiff must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citations omitted). Second, the inmate must satisfy a subjective element. This means that the prison official must "know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Prison officials may avoid liability if they: (1) were unaware of the risk, or (2) "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844–45.

### 1. Personal Safety

Plaintiff alleges that he has been in danger of serious bodily harm from white supremacists due to assistance he provided in the prosecution of two white supremacist gang members in 1998 and 1999. Defendants argue they have not been deliberately indifferent to a serious risk to Plaintiff's health and safety, but that NDOC has been responsive to any threat, and there is no evidence that NDOC has failed to protect him. Specifically, Defendants point out that Plaintiff has not been attacked or harmed during the time period he has been housed at NDOC and that even if there were an ongoing threat to Plaintiff's safety: (1) his poor disciplinary history has resulted in the denial of interstate transfer; and (2) they have taken reasonable steps to protect him by classifying him as close custody where he is not permitted contact with other inmates, including his perceived enemies.

Plaintiff argues that after he assisted in the successful prosecution of two white supremacist gang members for murder of a fellow inmate, he was housed at ESP with these two convicted gang

members.  Plaintiff states that the argument that Plaintiff must remain at ESP, Nevada's only maximum security prison, is flawed because he was recently transferred to High Desert State Prison, a medium security facility.  Plaintiff also argues that security in Plaintiff's housing unit at ESP was often lax, and because the two inmates he helped convict reside at ESP, he was subject to unnecessary risk.  Plaintiff cites one instance on a bus from Nevada State Prison (NSP) to ESP where a white supremacist gang member allegedly held a razor blade to his throat.

Defendants do not dispute that Plaintiff faced a substantial risk of serious harm if he comes into contact with white supremacist gang members, and in particular, the two white supremacist gang members against whom Plaintiff testified who were also housed at ESP.  Rather, Defendants insist that they responded reasonably to that risk.  Defendants argue that Plaintiff was in no danger at ESP because he has always been in some form of protective custody.  Defendants produce evidence that while housed at ESP, Plaintiff has been celled in either segregated confinement or the prison infirmary due to his close custody classification.  Plaintiff's custody classification is specifically due to the assistance he provided in the criminal prosecution of the two white supremacist gang members.  According to Defendants, Plaintiff is housed alone, conducts all out-of-cell movement alone, and has been precluded from face-to-face contact with any other inmate.  Also, the record is clear that Defendants repeatedly attempted to transfer Plaintiff to an out-of-state facility, but due to Plaintiff's extensive disciplinary record, no other state has been willing to accept Plaintiff.  In fact, Plaintiff was previously housed in California for a period of eleven (11) years, but on November 6, 1996, the California Department of Corrections requested that Plaintiff be returned to NDOC, citing ongoing disciplinary problems with him.  Plaintiff was also rejected by numerous states under the Interstate Corrections Compact, including the following: July 17, 1998, rejected by Idaho; July 29, 1998, rejected by North Dakota; July 30, 1998, rejected by Utah; August 28, 1998, rejected by Minnesota; September 2, 1998, rejected by Ohio; and September 9, 1998, rejected by Oregon. Plaintiff was subsequently transferred to Wyoming, only to again be returned to NDOC for ongoing disciplinary problems and increasingly violent behavior.  After Plaintiff's return from Wyoming, Defendants once again attempted to transfer Plaintiff to another state, but those states also rejected

1    Plaintiff as follows: March 26, 2001, rejected by Colorado; July 12, 2002, rejected by New Mexico;

2    October 1, 2002, rejected by Washington; February 11, 2005, rejected by Arizona; July 16, 2005,

3    rejected by Montana; and August 24, 2005, rejected by Illinois.

4         Plaintiff's extensive poor disciplinary history includes numerous violations, including

5    multiple violations for possession of contraband, threats, disobeying orders, failure to submit to drug

6    testing, possession of intoxicating substances, work stoppage, battery, failure to follow rules, use of

7    banned substances and possession/sale of banned substances.  Plaintiff has been disciplined for

8    manufacturing alcohol; fighting with another inmate; use of a controlled substance; possession of a

9    syringe or hypodermic kit; battery on an inmate; possession of a weapon on Plaintiff's body;

10   possession of drug paraphernalia, stimulants and sedatives; and control of marijuana.  Plaintiff's

11   poor disciplinary history easily supports Defendants position that Plaintiff is a security risk and that

12   their failure to achieve a transfer to another state was not because their attempts were unreasonable.

13   Their attempts have in fact been herculean, despite Plaintiff's continuing sabotage of Defendants'

14   efforts on Plaintiff's behalf by his own disciplinary infractions.  Plaintiff was transferred to High

15   Desert State Prison  in October 2010.  Defendants address this transfer in their reply brief stating that

16   "High Desert is now capable of housing long-term, protective custody prisons such as Plaintiff.

17   [Plaintiff] is still classified as a maximum, or close custody, inmate."

18        Prison officials must be given "wide-ranging deference in the adoption and execution of

19   policies and practices that in their judgment are needed to preserve internal order and discipline to

20   maintain institutional security." *Bell v.  Wolfish*, 441 U.S. 520, 546–47 (1979); *see also Turner v.*

21   *Safely*, 482 U.S. 78, 87–91 (1987).  Here, Defendants had legitimate penological reasons for housing

22   Plaintiff at ESP.  The Court's analysis does not change in light of Plaintiff's transfer to High Desert

23   State Prison because the court finds that this does not negate the legitimate penological reasons

24   Defendants had for keeping Plaintiff at ESP, a maximum security facility.  Moreover, while he was

25   housed at ESP, Defendants took reasonable steps to ensure Plaintiff's safety.  Plaintiff was under a

26   protective custody classification, and precluded from coming into contact with other inmates.

27   Furthermore, while Plaintiff alleges he is aware of other inmates being attacked at ESP and that he

28

has received threats from other white supremacist gang members, there is no evidence to suggest that Plaintiff has been attacked by white supremacists.  Plaintiff does present an affidavit wherein he states that in August 2005, he was placed handcuffed into a cell in the visiting area of ESP with one of the defendants against whom he testified, and that he was put on a unit with one of the defendants and a member of the "Aryan Warriors."  Plaintiff does not describe the circumstances any further, and does not set forth evidence showing that either of these particular incidents placed him at a substantial risk of serious harm or that Defendants failed to take reasonable steps to protect him under these circumstances.  Plaintiff also asserts that on July 3, 2008, he was placed on a bus with a member of the "Aryan Brothers," but again, he does not set forth evidence to establish Defendants did not take reasonable steps to avoid a substantial risk of serious harm.  While Plaintiff's concerns for his safety are legitimate, Plaintiff has made it nearly impossible for Defendants to transfer him to another state, and Defendants have taken reasonable precautions to ensure Plaintiff's safety. Defendants have met their burden by establishing that they responded reasonably to the risks posed to Plaintiff's safety.  Plaintiff has failed to show that Defendants disregarded a substantial risk to Plaintiff's safety.  To the contrary, the record indicates Plaintiff's own behavior has prevented an interstate transfer.  Defendants' decision to keep Plaintiff at ESP was supported by legitimate penological purposes.  Moreover, Plaintiff is now housed at High Desert.  Under these facts, Plaintiff's confinement at ESP, and now High Desert, is warranted and does not rise to the level of deliberate indifference.  Accordingly, the Court adopts the MJ's R&R and grants summary judgment to all Defendants on this claim.

**2.    Serious Medical Needs**

Plaintiff alleges he was denied adequate medical care for degenerative disc disease and foraminal stenosis of the lumbar spine.  Defendants argue: (1) there is no objective evidence that Plaintiff has a serious medical need; and (2) that they have provided Plaintiff with appropriate care. Defendants aargue that the medical records instead support a conclusion that Plaintiff is malingering. Defendants point to Dr. Koehn's review of Plaintiff's medical records, revealing sixteen instances in two years where Plaintiff was observed performing normal daily functions, without limitation.  In

1   addition, Defendants argue that the medical evidence demonstrates that Plaintiff's complaints of pain

2   are contrived in an effort to obtain pain medication and a cane or walker, potential weapons.  Finally,

3   Defendants maintain that despite the absence of a serious medical need, NDOC has provided

4   Plaintiff with an appropriate course of treatment.

5           A prisoner can establish an Eighth Amendment violation arising from deficient medical care

6   if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v.*

7   *Gamble*, 429 U.S. 97, 104 (1976).  In *Estelle*, the Supreme Court determined that deliberate

8   indifference to a prisoner's serious medical needs constitutes the "unnecessary and wanton infliction

9   of pain" proscribed by the Eighth Amendment.  "This is true whether the indifference is manifested

10  by prison doctors in their response to the prisoner's needs or by prison guards in intentionally

11  denying or delaying access to medical care or intentionally interfering with the treatment once

12  proscribed." *Estelle*, 429 U.S. at 104–05.  A finding of deliberate indifference in this context

13  involves the examination of two elements: the seriousness of the prisoner's medical need and the

14  nature of the defendant's responses to that need. *McGuckin v.  Smith*, 974 F.2d 1050, 1059 (9th Cir.

15  1992), *overruled on other grounds, WMX Techs, Inc.  v.  Miller*, 104 F.3d 1133, 1136 (9th Cir.

16  1997).  A "serious" medical need exists if the failure to treat a prisoner's conditions could lead to

17  further injury or the "unnecessary and wanton infliction of pain." *Id*. (citing *Estelle*, 429 U.S. at 104).

18  Examples of conditions that are "serious" in nature include an injury that a reasonable doctor or

19  patient would find important and worthy of comment or treatment, a medical condition that

20  significantly affects an individual's daily activities, or the existence of chronic and substantial pain.

21  *McGuckin*, 974 F.2d at 1060; *see also Lopez v.  Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

22          If the medical needs are serious, the plaintiff must show that the defendant acted with

23  deliberate indifference to those needs. *Estelle*, 429 U.S. at 104.  "Deliberate indifference is a high

24  legal standard." *Toguchi v.  Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  The plaintiff must

25  demonstrate that the prison medical staff knew of and disregarded an excessive risk to his health.

26  *Farmer*, 511 U.S. at 837.  Deliberate indifference entails something more than medical malpractice

27  or even gross negligence. *Toguchi*, 390 F.3d at 1061.  Inadvertence alone is insufficient to establish a

28                                                      10

claim under § 1983. *McGuckin*, 974 F.3d at 1060.  Instead, deliberate indifference is only present

when a prison official "knows of and disregards an excessive risk" to an inmate's health and safety.

*Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2003) (quoting *Farmer*, 511 U.S. at 858).  "Prison

officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or

intentionally interfere with medical treatment" or the express orders of a prisoner's prior physician

for reasons unrelated to the medical needs of the prisoner. *Hamilton v.  Endell*, 981 F.2d 1062, 1066

(9th Cir.  1992); *Hunt v.  Dental Dep't*., 865 F.2d 198, 201 (9th Cir. 1989) (citations omitted). Where

delay in receiving medical treatment is alleged, however, a prisoner must demonstrate that the delay

led to further injury. *McGuckin*, 974 F.2d at 1060.  In addition, a prison physician is not deliberately

indifferent to an inmate's serious medical needs when the physician prescribes a different method of

treatment than requested by the inmate. *Franklin v.  Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

To establish that a difference of opinion amounted to deliberate indifference, the prisoner "must

show that the course of treatment the doctors chose was medically unacceptable under the

circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the

prisoner's health]." *Jackson v.  McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

   Here, Plaintiff alleges Defendants have denied him proper medical treatment for his

excruciating back pain since 2005.  Defendants first argue that there is no objective evidence that

Plaintiff has a serious medical need, but instead, the medical evidence supports a conclusion that

Plaintiff is malingering because he has been observed performing normal daily functions.

Defendants assert that Plaintiff's complaints are contrived in an effort to obtain pain medication and

potential weapons in the form of a cane or walker.  The Court agrees.

   The Court can assume for the sake of argument that Plaintiff has a "serious medical need" for

painkillers.  But there is no genuine issue of material fact that Defendants have not been deliberately

indifferent to this need.  The prescription of pain medication to alleviate pain negates any charge of

deliberate indifference.  As for the requests for a cane or walker, Defendants have not only a

legitimate, but a compelling, interest in not providing dangerous instruments to an inmate with a

disciplinary history so atrocious that no state will accept him for transfer because of it, and two states

11

1   that originally accepted him have expelled him.  The evidence of malingering only strengthens the

2   State's concerns, though it is not at all necessary to support its decision.  Defendants have duties not

3   only to Plaintiff, but to other inmates and staff.  Providing a long, solid object strong enough to

4   support the weight of a man to an inmate who is known to be a discipline problem would be

5   positively reckless.  The Court therefore rejects the R&R in this regard and grants summary

6   judgment to all Defendants on this claim.

7            **C.      State Law Claims**

8            Plaintiff's second cause of action is for Negligence/Gross Negligence.  Plaintiff alleges that

9   Defendants had a duty to act with reasonable care in rendering medical treatment to Plaintiff and

10  breached such duty in denying Plaintiff access to adequate and competent medical treatment, care

11  and facilities, and/or in their refusal to allow Plaintiff's to be examined and/or treated by independent

12  physicians.  Defendants argue that Plaintiff's claim of medical malpractice fails because he did not

13  attach the affidavit of a medical expert as required by Nevada Revised Statute section 41A.071.  The

14  Court agrees.  The Court respectfully disagrees with the MJ's conclusion that because Plaintiff has

15  entitled the claim as "negligence," it necessarily does not fall within the ambit of section 41A.071.

16  The gravamen of the claim is negligent medical treatment.  Therefore, the affidavit requirement

17  applies.  The MJ appears to have believed that section 41A.071 creates a statutory cause of action

18  that Plaintiff did not invoke.  But section 41A.071 simply creates a procedural requirement

19  applicable to medical malpractice claims.  It applies here, and Plaintiff has not complied.  Under

20  state law, the Court must dismiss without leave to amend in the present case, but without prejudice to

21  filing a future lawsuit based upon the claim. *See* Nev. Rev. Stat. § 41A.071; *Washoe Med. Ctr. v.*

22  *Second Judicial Dist. Ct.*, 148 P.3d 790, 792 (Nev. 2006).  The Court therefore respectfully rejects

23  the R&R in this regard and will order the negligence claim dismissed without leave to amend, but

24  without prejudice.

25           Finally, the Court rules that the individual Defendants are entitled to qualified immunity

26  against the constitutional claims, as it would not have been clear to a reasonable officer that

27  Defendants' actions in this case violated the Eighth Amendment.

28
                                                12

**CONCLUSION**

IT IS HEREBY ORDERED that the Report and Recommendation (ECF No. 230) is ADOPTED IN PART and REJECTED IN PART.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 204) is GRANTED, except that the negligence claim is dismissed, without leave to amend, but without prejudice.

IT IS FURTHER ORDERED that the Clerk shall enter judgment, accordingly, and close the case.

IT IS SO ORDERED.

Dated this 26th day of April, 2013.

_____
ROBERT C. JONES
United States District Judge

13